444 P.2d 119

GOODYEAR SERVICE STORE and Continental Casualty Company, Plaintiffs,

v.

INDUSTRIAL COMMISSION of Utah, and Glenn M. Dowdle, Defendants.

No. 10859.

Supreme Court of Utah.

July 31, 1968.

Shirley P. Jones, Jr., Salt Lake City, for plaintiffs.

Phil L. Hansen, Atty. Gen., Salt Lake City, Findley P. Gridley, Ogden, for defendants.

ANDERSON, District Judge:

Glenn M. Dowdle was injured repairing a tire and in this case made claim for loss of vision due to an injury to the eye muscles causing double vision. After much correspondence and many hearings and examinations, the Commission awarded him a full award for loss of vision of one eye. The plaintiffs appeal.

On July 25, 1960, while defendant Dowdle was working at the Goodyear Service Store filling a tire with air it exploded causing fractures in his hands and injury to his kneecap. No evidence of injury to his eyes was observed at first. Later Mr. Dowdle asked for a hearing and asserted that air pressure in the original accident caused injuries to his eyes resulting in double vision.

The Commission appointed a medical panel to evaluate his claim. On November 20, 1964, the panel reported that its unanimous conclusion was that there was no evidence to substantiate the claim that the accident had caused the claimed double vision. A hearing was held on March 8, 1965, where the defendant was examined by Dr. Smith. Based on Mr. Dowdle's description of "before and after" he observed that it was realistic to presume this accident did have relationship to his eye condition. September 7, 1965, the medical panel filed a report in which it agreed that it was "very likely" that the injury had been caused by the accident. They then said further:

\* \* \* Mr. Dowdle had suffered a visual disturbance which represents a 100 percent loss of motility efficiency in

one eye. [Motility being the ability of the eye to move.]

On the basis of the binocular visual efficiency calculations this gives us a 100 percent efficiency loss of one eye with the other eye remaining normal. This represents a binocular visual efficiency loss of 25 percent.

At the March 8th hearing, Mr. Dowdle's suggestion that the panel examine him directly resulted in Drs. Richard W. Sonntag, Rowland H. Merrill and Homer Smith examining him and filing the report referred to above. Objections to the report were made and a further hearing therefore held on January 10, 1966. At this hearing a discussion developed on the prospects of improving his condition by surgery. Dr. Homer Smith was requested to perform it and the matter of final consideration of the loss of vision awaited the outcome.

Notwithstanding the continuance the Commission entered its order on February 25, 1966, awarding Mr. Dowdle for loss of binocular visual efficiency one-half of the amount allowed by statute for total blindness in one eye. Because the outcome of Dr. Smith's surgery was not known at the time, plaintiffs objected to that order and reminded the Commission the hearing had been continued pending Dr. Smith's report of the result.

Dr. Smith reported to the Commission on July 18, 1966, that the operation had been performed with good result. He stated that with the use of glasses Mr. Dowdle had satisfactory vision in all fields of gaze, but that without them double vision continued with the same deficiency he had stated before, to-wit:

But without his glasses he has the visual efficiency loss of one eye. Without his glasses, this would then represent a 25 percent loss of binocular visual efficiency, with 100 percent visual efficiency loss of one eye.

The plaintiffs herein objected to Dr. Smith's evaluation and requested that he appear before the medical panel for examination. The Commission appointed Drs. Rowland H. Merrill, Charles Ruggeri, Jr., and Richard R. Sonntag as a panel to investigate, make findings and report. On October 20, 1966, this panel signed a report which included the following findings:

1. The applicant was examined by a member of the panel.

2. Surgery has been accomplished in an effort to make his visual mechanism more tolerable.

3. The patient has diplopia in all cardinal meridians of gaze.

4. On the basis of these findings according to A. M. A. standards this represents the equivalent of the total loss of one eye.

5. The opinion of the panel substantiates the A. M. A. conclusion that one eye is lost to normal function.

Subsequent to the filing of the report, on February 10, 1967, the Commission entered its order awarding defendant 100 weeks, or $4,200; the total amount allowed by law for total blindness of one eye.

The plaintiffs seek a reversal of the award of the Commission to Mr. Dowdle which was based on the finding he had sustained a total loss of vision in one eye. They claim that the Commission did not correctly evaluate defendant's eye condition and disability in its order of February 10, 1967. Particularly, they take issue with that part of the Commission's order that states:

> The panel reports and Dr. Smith's testimony, as well as the testimony of Dr. Sonntag, must be rejected so far as 25 percent loss of binocular vision is concerned. The Supreme Court of Utah has held that total loss of vision of one eye entitles the injured employee to compensation for 100 weeks and binocular vision in that situation does not apply.

Plaintiffs strongly urge that the Supreme Court has not held as asserted by the Commission's order, and that the fact of the matter is that the undisputed evidence ·in this case is that Mr. Dowdle did not suffer "total blindness of one eye" within the meaning of the statute, 35–1–66, Utah Code Annotated, 1953, under which the award was made. Rather, plaintiffs claim that the uncontroverted evidence is that each of Mr. Dowdle's eyes, considered alone, had substantial vision, and that only when they work together as a visual system is the effect of the injury manifest. Consequently, they claim the binocular vision standard should apply. By this standard the loss to the total visual system, according to the evidence, would be 25 percent. Plaintiffs ask that the Commission be required to consider this evidence in determining the damages Mr. Dowdle has suffered.

The defendants respond that the primary issue is whether or not the award of the Commission was based upon substantial and competent evidence. As to this, they assert, the Commission's finding of the loss of vision of one eye is consistent with the finding of the medical panel on October 20, 1966. They found:

> 5. The opinion of the panel substantiates the A. M. A. conclusion that one eye is lost to normal function.

Plaintiffs appear to sense in the comments of Commissioner Wiesley an Achilles heel when he speaks of the Supreme Court having:

> * * * on three or four occasions interpreted the law. And because the law provides one-hundred weeks for a total loss of vision in one eye, we may not use the binocular vision [standard].

It is then asserted that there are no such cases, with which proposition the defendants agree. It is argued that the Industrial Commission wrongly thought it could not in any event consider a binocular medical disability rating with respect to visual impairment.

It is true there appear to be no cases negating the use of such a standard. But, what appears to be overlooked is the fact that the Commission, according to the testimony of Dr. Smith, who was chairman of the panel for many years, had given instruction that the panel was always to consider the binocular visual efficiency relationships, and that all of his reports will therefore show both the one eye visual efficiency loss and the binocular visual efficiency loss. Also, the Commissioner in the very statement referred to states that:

* * * when we have an eye examination, we like to have both binocular vision and monocular vision. * * *

In the testimony of Drs. Sonntag and Smith they give both the monocular and binocular efficiency loss ratings. Dr. Smith stated:

Q. What do you mean by "stereoscopic vision?

A. The simultaneous use of each eye together, permitting it to function as it should. Now again, without glasses, doubleness of vision being present in all fields of gaze, we have the identical vision deficiency relationships which I described earlier. With 100 percent visual efficiency loss of one eye, and binocular visual deficiency loss when viewing the whole visual system. These calculations are based on the American Medical Association Reports designating such visual deficiencies of both 1955 and 1958, and they do not differ in any way. * * * But my instructions have always been to consider the binocular visual efficiency ratio, and this is why I considered it in this case, as I had in every other case.

In this he states that the condition Mr. Dowdle has gives rise to a rating based either on the monocular or binocular test. Dr. Sonntag stated:

Mr. Gridley: Q. Now, in connection with the Panel's Report, do I understand that the Panel's opinion is based upon the tests that were given to Mr. Dowdle in his examination as recently as October 20, 1966, and that considering merely the A. M. A. standards, and from a binocular standpoint he now suffers from what you would describe as the total loss of one eye to normal function?

A. Without glasses, yes.

In many other places a similar response appears to questions inquiring about the loss of vision. In fact, the report of the medical panel of September 7, 1965, given without the stimulus of artful questioning of counsel, as quoted above, reports that

there was "100 percent efficiency loss of one eye with the other eye remaining normal. This represents a binocular visual efficiency loss of 25 percent." Hence, we must conclude that this is a customary way of expressing the visual damage caused by the type of injury Mr. Dowdle suffered.

It is true that Drs. Sonntag and Smith appeared to express a preference for the binocular efficiency loss rating of 25 percent where, as here, there was vision in each eye, believing that this formula becomes important in determining the impairment to the total visual system. Nonetheless, by past practice in making reports to the Commission in similar cases, and by their own original response in this case they had expressed the damage in both binocular and monocular test terms.

■ Whether a 100 percent loss of the visual efficiency of one eye is due to the inability of the lens of that eye to further function, or is the result of an injury to the muscles of the eye that provide motility, thus resulting in loss of vision by diplopia, the result appears to be the same—the patient has a loss of total vision equivalent to 100 percent loss of visual efficiency of one eye. At least, it may be thus reasonably inferred from the medical panel's report. This would seem to be the substantial equivalent of what was intended by the statute as a basis for an award as there provided.

■ As we said in the Western Contracting Corp. v. Industrial Commission case, 15 Utah 2d 208, 390 P.2d 125,

Whether the injury resulted in total blindness to the eye was within the prerogative of the Industrial Commission to determine.

■ Plaintiffs also assert that the change of the Commission's order of February 25, 1966, for an award of one-half the amount allowed for loss of vision of one eye to a full award under its order of February 10, 1967, with only Dr. Smith's operation on Mr. Dowdle in the interim to improve his eye problem, manifestly shows the award was arbitrary and capricious. A close reading of the record will show that all of the communications and the hearings held in this case, with the changes from the initial response of the Commission of "no causal connection" to the final award of 100 percent loss of visual efficiency of one eye show an effort to be fair and judicious in the consideration of the interests of all of the parties.

■ The Commission's factual findings in the instant case are supported by the medical evidence received and reflected in the record. As we have said before, when the factual findings of the Commission as to the source and extent of an applicant's injuries are based upon substantial and competent evidence received by it, they will not be disturbed by this court. Kent v. Industrial Commission, 89 Utah 381, 57 P.2d

724; Moray v. Industrial Commission, 58 Utah 404, 199 P. 1023.

The award to Mr. Dowdle is affirmed. Costs to defendant.

CROCKETT, C. J., and CALLISTER, TUCKETT and ELLETT, JJ., concur.

HENRIOD, J., having disqualified himself, does not participate herein.